UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF NORTH CAROLINA
WESTERN DIVISION

No. 5:11-CV-651-FL

| | | |
|---|---|---|
| CHARLES J. WEINRAUB, | ) | |
| | ) | |
| Plaintiff, | ) | |
| | ) | |
| v. | ) | ORDER |
| | ) | |
| UNITED STATES OF AMERICA, | ) | |
| | ) | |
| Defendant. | ) | |

This matter is before the court on defendant's motion to dismiss (DE # 8). Plaintiff has filed a response in opposition to the motion (DE # 19), and defendant has filed a reply (DE # 20). In this posture, the matter is ripe for ruling. For the following reasons, defendant's motion to dismiss is granted.

## STATEMENT OF THE CASE

Plaintiff, Charles J. Weinraub, filed this action on November 15, 2011, alleging claims against defendant, the United States of America, for assault and battery, false imprisonment, false arrest, and negligence under the Federal Torts Claims Act ("FTCA"). Defendant has moved to dismiss the action, pursuant to Rules 12(b)(1) and 12(b)(6) of the Federal Rules of Civil Procedure, on the grounds of lack of jurisdiction based on sovereign immunity and for failure to state a claim upon which relief may be granted. On March 3, 2012, the court stayed discovery, except as agreed to by the parties as necessary to resolve jurisdictional issues, pending resolution of defendant's motion to dismiss.

## STATEMENT OF FACTS

The relevant facts as alleged in plaintiff's complaint are as follows. Raleigh Durham Airport ("RDU") is an international airport in Wake County, North Carolina. Plaintiff lives in

North Carolina, has a manufacturing business in Indiana, and travels between North Carolina and Indiana approximately twice a month. On October 11, 2010, plaintiff was scheduled on Delta Airlines Flight #2356 from Raleigh to Detroit at 6:00 a.m. After plaintiff passed through the security checkpoint, which was staffed by Transportation Security Administration ("TSA") screeners, he was unable to locate his wallet and asked a TSA screener as to its whereabouts. Plaintiff found his wallet and, as he continued collecting his belongings, was approached by a second TSA screener, whom plaintiff believed to be Tasha Dixon ("Dixon"). Dixon accused plaintiff of striking the first screener with his belt, which plaintiff denied. Dixon then asked the first screener if charges should be pursued against plaintiff, and the first screener replied in the negative without further comment.

Plaintiff gathered his belongings without further incident and continued through the terminal. While plaintiff was seated in the terminal, he was approached by Dixon, who was accompanied by three RDU International Airport Police Department officers ("officers"). The officers detained and arrested plaintiff based on the accusations made by Dixon. Plaintiff was handcuffed, escorted through the terminal, and taken to a holding room in the security screening area where the officers read him his Miranda rights. The officers did not inform plaintiff of any charges against him at that time. Plaintiff was later taken to the RDU police facility, where he requested that the officers review the surveillance video to confirm that he had not committed any crime. After review of the video surveillance recording, the officers dropped the charges and released plaintiff from custody.

Plaintiff had to make new travel arrangements, and lost a day of productivity as a result of the incident. Plaintiff has a history of health problems that caused him to limp and to have difficultly moving quickly. Due to his limited mobility, the officers used some force to lift him

2

off the ground by his arms, walk him through the terminal, and place him into a police car. This aggravated plaintiff's health problems, and he later had to seek medical treatment. Plaintiff also claims that he suffered embarrassment and humiliation by being escorted through the airport and that he suffered mental anguish and emotional distress over his treatment by the TSA screeners. Plaintiff submitted a written administrative claim to the TSA seeking relief and damages in excess of $10,000.00, which was denied. Thereafter, plaintiff filed the instant action.

## DISCUSSION

### A. Standard of Review

#### 1. Rule 12(b)(1)

A Rule 12(b)(1) motion challenges the court's subject matter jurisdiction, and the plaintiff bears the burden of showing that federal jurisdiction is appropriate when challenged by the defendant. McNutt v. General Motors Acceptance Corp., 298 U.S. 178, 189, 56 S. Ct. 780, 80 L. Ed. 1135 (1936); Adams v. Bain, 697 F.2d 1213, 1219 (4th Cir. 1982). When the Rule 12(b)(1) motion attacks the complaint as failing to state facts upon which subject matter jurisdiction may be based, the facts in the complaint are assumed to be true and the plaintiff is afforded the same protections he or she would receive under a Rule 12(b)(6) motion. Adams, 697 F.2d at 1219. The Rule 12(b)(1) motion may alternatively attack the existence of subject matter jurisdiction in fact, apart from the complaint. Id. This type of attack is used when a court's limited jurisdiction precludes hearing the case brought. Id. Since the court's power to hear the case is at issue in a Rule 12(b)(1) motion, the court is free to weigh the evidence to determine the existence of jurisdiction. Id.

#### 2. Rule 12(b)(6)

3

The purpose of a Rule 12(b)(6) motion for failure to state a claim upon which relief can be granted is to eliminate claims that are factually or legally insufficient. Fed. R. Civ. P. 12(b)(6); Ashcroft v. Iqbal, 129 S. Ct. 1937, 1949-50 (2009); Bell Atl. Corp. v. Twombly, 550 U.S. 544, 570 (2007). "To survive a motion to dismiss, a complaint must contain sufficient factual matter, accepted as true, to 'state a claim to relief that is plausible on its face.'" Iqbal, 129 S. Ct. at 1949 (quoting Twombly, 550 U.S. at 570). "A claim has facial plausibility when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." Id. (quoting Twombly, 550 U.S. at 556). "The plausibility standard is not akin to a 'probability requirement,' but it asks for more than a sheer possibility that a defendant has acted unlawfully." Id. "A court need not accept a complaint's legal conclusions, elements of a cause of action, and bare assertions devoid of further factual enhancement." Alfaro v. United States, No. 5:09-CT-3073-D, 2011 WL 561320, at *1 (E.D.N.C. Feb. 8, 2011) (citing Iqbal, 129 S. Ct. at 1949-50; Nemet Chevrolet, Ltd. v. Consumeraffairs.com, Inc., 591 F.3d 250, 255 (4th Cir. 2009)).

**B. Analysis**

### 1. Plaintiff's Claims for False Arrest, False Imprisonment, and Assault and Battery

Defendant contends that this court lacks subject matter jurisdiction over plaintiff's FTCA claims for false arrest, false imprisonment, and assault and battery. The FTCA is a waiver of the United States' sovereign immunity, which permits a claimant to sue the United States for "the negligent or wrongful act or omission of any employee of the Government while acting within the scope of his office or employment. . . ." 28 U.S.C. § 2675(a); United States v. Kubrick, 444 U.S. 111, 116 n.4, 100 S. Ct. 352, 62 L. Ed. 2d 259 (1979). Courts should not extend the waiver of the United States' sovereign immunity beyond that which Congress intended. Id. at 118.

4

When invoking a waiver, the plaintiff bears the burden to show "that an unequivocal waiver of sovereign immunity exists and that none of the statute's waiver exceptions apply to his particular claim." Welch v. United States, 409 F.3d 646, 651 (4th Cir. 2005). If the plaintiff fails to meet this burden, the claims must be dismissed. Id.

At issue in the present case are two provisions of the FTCA commonly referred to as the "intentional torts exception" and the "law enforcement proviso," both of which are found in 28 U.S.C. § 2680(h).[1] Ignacio v. United States, 674 F.3d 252, 253 (4th Cir. 2012). The intentional torts exception "retains the United States' immunity in cases involving '[a]ny claim arising out of assault, battery, false imprisonment, false arrest, malicious prosecution, abuse of process, libel, slander, misrepresentation, deceit, or interference with contract rights,'" while the law enforcement proviso "preserves the waiver of immunity when certain named intentional torts are 'acts or omissions of investigative or law enforcement officers of the United States Government.'" Id. (quoting 28 U.S.C. § 2680(h)).

Plaintiff contends that a TSA screener is an "investigative or law enforcement officer" as described in § 2680(h), while defendant contends that a TSA screener does not fall within the scope of the law enforcement proviso and that, therefore, the United States has not waived its

---

[1] The full text of § 2680(h) reads as follows:

The provisions of this chapter and section 1346(b) shall not apply to—

. . . .

Any claim arising out of assault, battery, false imprisonment, false arrest, malicious prosecution, abuse of process, libel, slander, misrepresentation, deceit, or interference with contract rights: *Provided*, That, with regard to acts or omissions of investigative or law enforcement officers of the United States Government, the provisions of this chapter and section 1346(b) of this title shall apply to any claim arising, on or after the date of the enactment of this proviso, out of assault, battery, false imprisonment, false arrest, abuse of process, or malicious prosecution. For the purpose of this subsection, "investigative or law enforcement officer" means any officer of the United States who is empowered by law to execute searches, to seize evidence, or to make arrests for violations of Federal law.

28 U.S.C. § 2680(h).

sovereign immunity with respect to the intentional torts alleged in the complaint. The parties have cited no controlling authority, and there are few reported cases on this issue.

The court begins its analysis with the statute. Ignacio, 674 F.3d at 254 ("The starting point for any issue of statutory interpretation . . . is the language of the statute itself.") (quoting United States v. Bly, 510 F.3d 453, 460 (4th Cir. 2007)). If the statutory language "has a plain and unambiguous meaning with regard to the particular dispute," then the court's inquiry ends. Id. (citation omitted). Here, the phrase at issue, "investigative or law enforcement officer," is defined within the statute as "any officer of the United States who is empowered by law to execute searches, to seize evidence, or to make arrests for violations of Federal law." 28 U.S.C. § 2680(h). Plaintiff has not argued that TSA screeners are empowered to seize evidence or to make arrests, but contends that because TSA screeners conduct searches of people and their property as a function of the airport screening process, they necessarily fall within the law enforcement proviso under the plain meaning of the statute. The court disagrees.

TSA screeners perform limited, consensual searches that are administrative in nature. See 49 U.S.C. § 44901 (requiring the screening of all passengers and property); § 44902 (requiring passengers to consent to a search to establish whether a passenger is carrying, or the property of a passenger contains, a dangerous weapon, explosive, or other destructive substance); 49 C.F.R. § 1540.107 (requiring submission to screening and inspection of persons and property). See also Welch v. Huntleigh USA Corp., No. 04-663 KI, 2005 WL 1864296, at *5 (D. Or. Aug. 4, 2005) ("[TSA] screeners are able to conduct consensual administrative searches for items which are prohibited entry into the airport's sterile areas. Screeners do not have the authority to detain individuals and must call law enforcement officers to search, seize, and arrest individuals if illegal items are found."). However, the phrase "to execute searches," when

considered within the broader context of the law enforcement proviso, does not contemplate the types of searches performed by TSA screeners.

Congress chose to define "investigative or law enforcement officer," for purposes of the law enforcement proviso, to include officers that perform any one of three functions: the execution of searches, the seizure of evidence, or the making of arrests. 28 U.S.C. § 2680(h). Each of these are commonly understood to be traditional law enforcement functions performed by the likes of FBI agents, Bureau of Prisons officers, postal inspectors, and INS agents, all of which have broad investigative and law enforcement powers and have been found to fall within the law enforcement proviso. See, e.g., Medina v. United States, 259 F.3d 220, 224 (4th Cir. 2001) (INS agents – citing 8 U.S.C. § 1357, which confers broad power to search and arrest without a warrant); Harms v. United States, No. 91-2627, 972 F.2d 339, 1992 WL 203942, at *6 (4th Cir. Aug. 24, 1992) (unpubl. op.) (postal inspectors – citing 39 C.F.R. § 233.1(a), which confers broad power to arrest without a warrant). These traditional investigative or law enforcement officers have broad search, seizure, and/or arrest powers that they may exercise in a variety of circumstances, which stands in stark contrast to the TSA screener's power that is limited to pre-boarding searches for certain prohibited items. See United States v. McCarty, 648 F.3d 820, 831 (9th Cir. 2011) ("[O]nce a[n] [airport] search is conducted for a criminal investigatory purpose, it can no longer be justified under an administrative search rationale. . . . [T]he constitutional bounds of an airport administrative search require that the individual screener's actions be no more intrusive than necessary to determine the existence or absence of explosives that could result in harm to the passengers and aircraft.") (citation omitted). Therefore, it would be unreasonable to interpret "to execute searches" to include the TSA screener's performance of narrowly focused, consensual searches that are administrative in

7

nature, when considered in light of the other traditional law enforcement functions (i.e., seizure of evidence and arrest) that Congress chose to define "investigative or law enforcement officers." See Welch, 2005 WL 1864296, at *5 (concluding that screeners were not law enforcement officers because they could only perform consensual searches and could not seize evidence or make arrests) (citing Wilson v. United States, 959 F.2d 12, 15 (2d Cir. 1992) ("Because the power to seize evidence depends on the consent of the person from whom the evidence is to be taken, however, parole officers lack the seizure power contemplated by section 2680(h), and thus cannot be considered law enforcement personnel.")). Cf. Matsko v. United States, 372 F.3d 556, 560 (3rd Cir. 2004) ("[E]mployees of administrative agencies, no matter what investigative conduct they are involved in, do not come within the § 2680(h) exception.") (citation omitted)). As a result, the court concludes that TSA screeners are not "empowered by law to execute searches" for purposes of § 2680(h) and that, therefore, they are not "investigative or law enforcement officers." Thus, the law enforcement proviso to the intentional torts exception does not apply to TSA screeners, and plaintiff's claims for assault and battery, false imprisonment, and false arrest are barred by sovereign immunity.

Furthermore, it appears that the majority of courts to have considered the issue have concluded that TSA screeners are not within the law enforcement proviso of § 2680(h). See Coulter v. United States Dep't of Homeland Sec., No. 07-4894 (JAG), 2008 WL 4416454, at *9 (D. N.J. Sept. 24, 2008) (concluding that a TSA screener was not an "investigative or law enforcement officer" under § 2680(h)); Hartwell v. United States, No. 06-CV-121-SJO (PLAx), at 6 (C.D. Cal. Aug. 16, 2006) (slip op.) (same); Welch, 2005 WL 1864296, at *5 (same). Plaintiff contends that these courts "failed to give proper weight to the statutory language of the FTCA." Mem. in Opp'n to Mot. to Dismiss ("Pl.'s Mem.") at 9. Again, the court disagrees.

8

The court in Coulter examined the statutory authority cited by the plaintiff in that case, 49 U.S.C. §§ 44901[2] and 44935(b),[3] in addition to the legislative history of § 2680(h):

> A review of the legislative history reveals that Congress, in response to 'no-knock' raids conducted by federal narcotic agents on the wrong dwellings, passed the 1974 amendment to the Federal Tort Claims Act to provide compensation for such victims. S. Rep. No. 588, 93rd Cong., 2d Sess., reprinted in (1974) U.S. Code Cong. & Admin. News, pp. 2789, 2790-91. Congress intended to waive sovereign immunity for the torts of false arrest and false imprisonment only in limited circumstances. The federal government deprived itself "of the defense of sovereign immunity in cases in which Federal law enforcement agents (or investigative officers), acting within the scope of their employment, or under color of Federal law, commit (committed) . . . false imprisonment, false arrest . . . ." Id. at 2791.

Coulter, 2008 WL 4416454, at *8 (quoting Solomon v. United States, 559 F.2d 309, 310 (5th Cir. 1977) (concluding that security employees of a military exchange were not "investigative or law enforcement officers" within the meaning of § 2680(h)). The Coulter court concluded that neither statutory provision cited by plaintiff "empowers airport security screeners to execute searches . . . as contemplated by congress when drafting § 2680(h)," 2008 WL 4416454, at *8, and the court finds its reasoning persuasive.

---

[2] The relevant portion of the statute provides as follows:

> The Under Secretary of Transportation for Security shall provide for the screening of all passengers and property, including United States mail, cargo, carry-on and checked baggage, and other articles, that will be carried aboard a passenger aircraft operated by an air carrier or foreign air carrier in air transportation or intrastate air transportation. In the case of flights and flight segments originating in the United States, the screening shall take place before boarding and shall be carried out by a Federal Government employee (as defined in section 2105 of title 5, United States Code), except as otherwise provided in section 44919 or 44920 . . . .
>
> All screening of passengers and property at airports in the United States where screening is required under this section shall be supervised by uniformed Federal personnel of the Transportation Security Administration who shall have the power to order the dismissal of any individual performing such screening.

49 U.S.C. § 44901(a) & (b).

[3] 49 U.S.C. § 44935 includes no language related to the power of a screener to perform searches. Coulter, 2008 WL 4416454, at *8.

9

Plaintiff also contends that the court in Welch was "clearly wrong" in excluding screeners from the scope of the law enforcement proviso because screeners do not *both* perform searches *and* have the authority to arrest. Pl.'s Mem. at 5-6. Plaintiff misapprehends the Welch court's ruling. The court in Welch first stated that the screeners "did not have the authority to execute searches, seize evidence, *or* make arrests for violations of Federal law." 2005 WL 1864296, at *5 (emphasis added). The court then went on to discuss the limited and consensual nature of the screener's authority to search and the fact that screeners must engage law enforcement to search, seize, and arrest an individual if illegal items are found during a screening. Id. The court's conclusion that screeners cannot be considered law enforcement officers for purposes of the FTCA because they only "perform consensual searches, and had no power to arrest," id., is entirely consistent with the statutory language in that if screeners had the power to arrest (or to seize evidence), they would be considered law enforcement officers despite the fact that they only perform consensual searches. Accordingly, the Welch court did not erroneously construe "or" to mean "and" in its analysis of § 2680(h).

The court acknowledges that the recent decision of Pellegrino v. United States, ___ F. Supp. 2d ___, 2012 WL 661773 (E.D. Pa. 2012), which is not binding on this court, is at odds with the decision reached herein. The Pellegrino court concluded that the law enforcement proviso *may* encompass TSA screeners because they are empowered to conduct warrantless searches, but that discovery was required to determine whether TSA screeners "were authorized to execute searches, seize evidence, or make arrests" so as to bring them within § 2680(h)'s definition of "investigative or law enforcement officer." 2012 WL 661773, at *6-7. However, the court declines to follow Pellegrino, because, among other things, it fails to distinguish between the broad power to execute warrantless searches possessed by other officers found to

10

fall within the law enforcement proviso, as the court discussed supra, and the narrowly focused, administrative searches conducted by TSA screeners.

Finally, support for the court's decision can be found in Congress's delegation of power to the Administrator of TSA[4]. See Caban v. United States, 671 F.2d 1230, 1234 n.4 (2d Cir. 1982) (considering power delegated by Congress to INS agents in concluding that they fall within the law enforcement proviso of § 2680(h)). Congress delegated to the Administrator of TSA both airport "screening operations" and "law enforcement powers." 49 U.S.C. § 114(e) & (p). With respect to screening operations, Congress provided as follows:

The Under Secretary shall—

> (1) be responsible for day-to-day Federal security screening operations for passenger air transportation and intrastate air transportation under sections 44901 and 44935;
>
> (2) develop standards for the hiring and retention of security screening personnel;
>
> (3) train and test security screening personnel; and
>
> (4) be responsible for hiring and training personnel to provide security screening at all airports in the United States where screening is required under section 44901, in consultation with the Secretary of Transportation and the heads of other appropriate Federal agencies and departments.

49 U.S.C. § 114(e). Congress separately provided that "[t]he Under Secretary may designate an employee of the Transportation Security Administration or other Federal agency to serve as a law enforcement officer," id. § 114(p)(1), and that such an officer may—

(A) carry a firearm;

(B) make an arrest without a warrant for any offense against the United States committed in the presence of the officer, or for any felony cognizable under

---

[4] The head of TSA, now referred to as the "Administrator," 49 C.F.R. § 1500.3, was originally designated by statute as "the Under Secretary of Transportation for Security," 49 U.S.C. § 114(b)(1).

11

the laws of the United States if the officer has probable cause to believe that the person to be arrested has committed or is committing the felony; and

(C) seek and execute warrants for arrest or seizure of evidence issued under the authority of the United States upon probable cause that a violation has been committed.

49 U.S.C. § 114(p)(2). See id. § 44901(h)(2) ("[T]he Under Secretary shall order the deployment of at least 1 law enforcement officer at each airport security screening location.") The fact that Congress distinguished between screening and law enforcement functions when delegating authority to the Administrator of TSA supports the court's conclusion that TSA screeners are not "investigative or law enforcement officers" within the meaning of § 2680(h). It is also noteworthy that the TSA itself does not consider the position of "Transportation Security Officer (Screener)" to be a law enforcement position. Mem. in Supp. of Def.'s Mot. to Dismiss, Ex. B at 3 ("This position is not a law enforcement position.").

In sum, the court concludes that the limited, consensual searches conducted by TSA screeners do not bring them within the definition of "investigative or law enforcement officers" and, therefore, do not implicate the law enforcement proviso of § 2680(h). Accordingly, plaintiff's claims for assault and battery, false imprisonment, and false arrest are barred by sovereign immunity.

### 2. Plaintiff's Claim for Negligence

Defendant also contends that plaintiff has failed to state a negligence claim independent of the conduct underlying his claims for assault and battery, false imprisonment, and false arrest, which the court has determined are barred by the intentional torts exception of § 2680(h). The court agrees.

The FTCA's intentional tort exception is broad and bars "[a]ny claim arising out of" an intentional tort. 28 U.S.C. § 2680(h). A plaintiff may not simply recast an intentional tort claim

12

as one for negligence to circumvent the bar of § 2680(h). United States v. Shearer, 473 U.S. 52, 55, 105 S. Ct. 3039, 3041-42 (1985) ("Section 2680(h) does not merely bar claims for assault or battery; in sweeping language it excludes any claim arising out of assault or battery. We read this provision to cover claims like respondent's that sound in negligence but stem from a battery committed by a Government employee.")

Plaintiff specifically alleges the following in support of his negligence claim:

> In exercising their authority and power over Mr. Weinraub, the TSA employees were careless and indifferent in the course of performing their duties and failed to exercise ordinary care under the circumstances resulting in injury and unnecessary suffering by Mr. Weinraub. Their actions were negligent and breached their duty of due care in the course of the performance of their duties.

Compl. ¶ 38. Here, while plaintiff has attempted to set forth the elements of a negligence claim, there are no factual allegations in the complaint with regards to that claim that are in any way distinct from those that support plaintiff's claims for assault and battery, false imprisonment, and false arrest. Iqbal, 129 S. Ct. at 1949 (quoting Twombly, 550 U.S. at 570) ("To survive a motion to dismiss, a complaint must contain sufficient factual matter, accepted as true, to 'state a claim to relief that is plausible on its face.'").

Furthermore, a plaintiff can only recover under the FTCA "where the United States, if a private person, would be liable to the claimant in accordance with the law of the place where the act or omission occurred." 28 U.S.C. § 1346(b)(1). Under North Carolina law, when an injury is intentional, the concept of negligence no longer applies. Pleasant v. Johnson, 312 N.C. 710, 715, 325 S.E.2d 244, 248 (1985); Lynn v. Burnette, 138 N.C. App. 435, 441, 531 S.E.2d 275, 279-80 (2000) (recognizing that intentional torts and negligence are "mutually exclusive theories of liability"). Plaintiff alleges in his complaint that a TSA employee had him arrested and removed from the airport "based on her desire to see [plaintiff] demeaned, inconvenienced, arrested and

13

charged unfairly with a crime [that] had never occurred." Compl. ¶ 19. This allegation is one of intentional conduct and, therefore, does not support a claim for negligence.

Accordingly, the court must conclude that plaintiff has failed to state a claim for negligence, or alternatively, that any claim for negligence "arises out of" his intentional tort claims and, thus, is barred by the plain language of § 2680(h).

## CONCLUSION

Defendant's motion to dismiss (DE # 8) is **GRANTED**, and plaintiff's claims are **DISMISSED WITH PREJUDICE**. The Clerk of Court is **DIRECTED** to close this case.

SO ORDERED, this the 13 day of August, 2012.

_____
LOUISE W. FLANAGAN
United States District Judge